This is an appeal from a judgment of custody of a child. We reverse.
Shaniece Dawn Lynn Hornbuckle was born November 11, 1974. The mother is a 33-year-old dope addict. Shaniece is the fifth child to which the mother has given birth. The father has the custody of the first two. The next two were placed for adoption by the State.
Though the mother was married at the time of conception of this child, the identity of the father is in question. The month of conception was February, 1974. The husband was in the penitentiary for burglary and the mother was admittedly living with Robert Hornbuckle. In February the mother visited her husband in prison and had sexual intercourse with him. The mother states the father is Robert Hornbuckle. Hornbuckle originally denied to the mother that he was the father, but now states he believes that he is.
To continue an odyssey of tragedy, Hornbuckle has served 12 years of a 99-year sentence for murder and was serving a sentence for burglary at the time of the trial below. The mother then was in Georgia awaiting prosecution for various drug related offenses.
The court became involved in the life of Shaniece with the filing of a petition of neglect by the Madison County Department of Pensions and Security on February 28, 1975. Shaniece was then slightly over 3 months of age. She was in the home of the maternal grandmother. The mother was in a hospital because of an overdose of drugs. The home of the grandmother was a gathering place for drinking and prostitution. The need for attention by the State was made known by the mother of Robert Hornbuckle.
After securing a court order to take custody of Shaniece, the Department placed her with Berta Hornbuckle until a hearing on March 17, 1975. On that date she was placed in the temporary care and custody of the Department.
On May 14, 1975, Berta Hornbuckle, the mother of Robert Hornbuckle, the paramour of the mother of Shaniece, filed a petition to intervene and for the custody of the child. Mrs. Hornbuckle sought custody on the contention that she was the paternal grandmother and loved and desired the child. The Department sought custody for placement for adoption. Hearing was held with extensive testimony. By judgment of October 27, 1975, the court granted permanent custody to Berta Hornbuckle.
Motion by the Department for new trial was granted. On December 1, 1975, additional testimony was taken. Judgment of March 8, 1976 adopted that of October 27, 1975, and awarded custody to Berta Hornbuckle. The Department brings this appeal.
The primary concern of the trial court in a child custody case is the best interest and welfare of the child. Brill v.Johnson, 54 Ala. App. 39, 304 So.2d 591, cert. quashed, 293 Ala. 435, 304 So.2d 595. That *Page 1374 
concern is equally before an appellate court upon review of the judgment rendered by the trial court. It is the responsibility of this court to examine the decision of the trial court in light of the testimony and its reasonable inferences and determine if that decision satisfies the concern of the best interest and welfare of the child. If, after such examination, the decision of the trial court appears to be so unsupported by the testimony as to clearly fail to sustain the present and future best interest and welfare of the child, the presumption of correctness of the decision is overcome and this court must set the decision aside. American Nat. Bank Trust Co. v.Powell, 235 Ala. 236, 178 So. 21; Baker v. Citizens Bank ofGuntersville, 282 Ala. 33, 208 So.2d 601; Ex parte UnionPlanters Nat. Bank and Trust Co. of Memphis, 249 Ala. 461,31 So.2d 596. We take such action in this case.
The trial court determined correctly that the legal parents of Shaniece were totally unworthy to possess parental or custodial rights. The mother is totally lacking in moral standards. She is a long-term drug addict, thief, forger and adulteress. The legal father is a convicted thief. The mother's lover, who is designated the father of Shaniece without legal or biological support, is a convicted thief and murderer. It is upon an alleged but unproven parenthood arising from an adulterous relationship of her son with the mother of Shaniece that Berta Hornbuckle claims right of custody.
What did the evidence disclose about Berta Hornbuckle? She is 70 years old with a 75-year-old husband. She is not in good health. She has given birth to eleven children with only four surviving. Two died in bed as infants of unknown causes. A third died in bed at age 14 of unknown causes. A daughter, recently divorced, lives with her parents and is employed outside the home. The daughter admitted having openly lived with a married man for several months. The only income of the Hornbuckles is some $210.00 monthly Social Security.
Mrs. Hornbuckle believes Shaniece to be her granddaughter. She kept Shaniece for brief periods twice in the first four months of her life. She desires her custody because she loves her and the mother promised to give the child to her. She only has occasional difficulty with her heart, but her physician does not consider her physically able to care for and rear a small child.
This court does not intend to denigrate Mrs. Hornbuckle. We are sure she has acted with good motive. However, it is distinctly evident that she and her husband cannot reasonably expect to live long enough, much less be physically and financially able to rear Shaniece to adulthood. The blood relationship emphasized by Mrs. Hornbuckle would bear consideration if it were proved rather than presumed. The statement of the mother that Robert is the father is of little value. She admits to sexual relations with two men, one being her legal husband, during the period of conception. Her admitted addiction and moral conduct fails to indicate worthiness for belief. The statement of Robert Hornbuckle that he is the father is mere opinion supported only by opportunity. Neither is he worthy of belief.
The evidence, taken in its most favorable light to Berta Hornbuckle, is as follows: She is 70 years old with some heart trouble. Her physician states that in his opinion she is physically unable now to lift and perform all the tasks of caring for an infant. Her desire for custody arises from a presumed blood relationship. The presumed affinity of blood arose out of an immoral and illegal relationship between her son and the mother. That son is a convicted murderer and thief presently in the penitentiary. The financial resources of the Hornbuckles are such as to provide minimal necessities of life for Shaniece, even as an infant. Six of the eleven children of Berta Hornbuckle died by the age of 14. Only one of her children has ever been to school past the seventh grade. If custody remains with the Hornbuckles, Shaniece will be subjected to the presence and influence of a legal father who is a convicted criminal, a reported father who is a twice convicted criminal, a mother who is a drug addict, a basely *Page 1375 
immoral woman and a convicted criminal. Shaniece will be presented with full knowledge and awareness of the character and reputation of those claiming parentage. The very claim upon which custody by the Hornbuckles must be based declares to Shaniece and the world that she is the illegitimate result of an illegal sexual union between a murderer and a drug addict.
Under the conditions, facts and circumstances we have related, it is the opinion of this court that the placing of custody of Shaniece in the home of Berta Hornbuckle is clearly adverse to her best interest and welfare. The only reasonable conclusion to be reached is that such action would be utterly destructive to opportunity for a future of physical and psychological well being.
The only possible means of escaping the cesspool of crime and immorality from which she came is to place her custody in the Department. The Department of Pensions and Security has the public charge to protect Shaniece from knowledge of or contact with the ugliness which produced her. There are adoptive parents awaiting Shaniece who can fill her life with beauty, love and happiness. Under the evidence of this case, to deny her the opportunity of such a life would be greatly unjust. The judgment of the trial court is reversed and the custody of Shaniece is directed to be given to the Department of Pensions and Security for the purpose of permanent planning and placement.
REVERSED AND REMANDED WITH DIRECTIONS.
BRADLEY and HOLMES, JJ., concur.