569 So.2d 418 (1990)
H.T. and G.T.
v.
C.T.W. and R.J.W.
In the Matter of A.M.N..
Civ. 7502.
Court of Civil Appeals of Alabama.
August 29, 1990.
*419 John A. Courtney, Mobile, for appellant.
Augusta E. Wilson, Mobile, for appellee.
ROBERTSON, Judge.
This is a child custody dispute.
This is an appeal from an order of the juvenile division of the circuit court of Mobile County, Alabama, awarding custody of A.M.N., a two-year-old male child, to the paternal grandparents. The maternal grandparents appeal, contending that the trial court erred in awarding custody to the paternal grandparents.
After carefully and thoroughly reviewing the entire record in this appeal, we find the following pertinent facts. The father and mother of A.M.N. were living in Virginia during the early part of the marriage, including following the birth of A.M.N., in a house owned by the maternal grandparents, who also resided in Virginia. Both parents are immature, inexperienced, and lacking in necessary skills for independent living. The father has demonstrated much unstableness with his substance abuse problem and inability to maintain employment. The mother tested in the borderline range of intelligence and attended special classes throughout school; therefore, much support, financial and otherwise, was supplied to the couple by both of their parents.
In November 1988, the father was convicted of assaulting the mother, and the family began family counseling in an attempt to deal with the father's substance abuse problem and other family coping problems. In early 1989, the couple separated. The father left the mother and child and moved to the home of his mother and stepfather in Mobile, Alabama. The mother and child remained in Virginia and moved in with her parents. On or about March 24, 1989, the mother took the child and drove to the home of the father's parents in Mobile, Alabama, in an attempt to reconcile the couple's differences and save the marriage. She, the child, and the father stayed in that home together for approximately ten days before the child incurred an injury that precipitated these proceedings.
On or about April 2, 1989, the mother was in the bathroom of the paternal grandparents' home bathing the child alone, when the child sustained an injury. The child's right foot was burned from scalding water, requiring the father and mother to take the child to the emergency room for treatment. Upon learning of the injury and not being satisfied with the explanations given by the mother, the father's family decided to send the mother back to Virginia without the child. They placed her on the first available bus, which departed Mobile at approximately two in the morning. Approximately 26 hours later, the mother arrived in Virginia confused and distraught. She immediately called a hospital and sought help for the stress and *420 confusion she was experiencing and was admitted to the hospital for treatment. The mother testified that she sought help because she was afraid she might hurt the child and that the father's family had told her that they were reporting the injury as intentional to be investigated as child abuse.
After sending the mother back to Virginia, the father filed a petition for custody of A.M.N., alleging that he feared for the safety and well-being of the child if he were allowed to remain with the mother. The Alabama Department of Human Resources (DHR) filed a motion to intervene, alleging that A.M.N. was a dependant child, that both parents were unfit or unwilling to care for the child, and that DHR was willing and able to accept custody of the child if needed. The motion to intervene was granted. After an initial hearing, the juvenile court entered an order placing temporary legal custody of A.M.N. with DHR pending the outcome of the case. The paternal grandmother was given physical custody, with the express condition that the child would not be left in the unsupervised presence of the father. Further, the court ordered that the child remain in Mobile County, that the mother have supervised visitation privileges, that home studies be conducted of both grandparents' homes, that the father receive drug and alcohol abuse counseling, that the mother receive psychiatric and psychological treatment as necessary, and that the court retain jurisdiction of the matter.
Subsequently, the mother, the paternal grandparents, and the maternal grandparents all petitioned for custody of the child. Numerous other hearings and orders followed, involving the temporary custody and other matters concerning the custody of the child. A final hearing on December 21, 1989, resulted in the trial court's finding the child "a dependent child who suffered physical injury due to the neglectful acts of his mother." The trial court determined that it was "most advantageous to the best interest of the minor child" to award custody of the child to the paternal grandparents. Supervised visitation was awarded to the mother.
On appeal, the maternal grandparents contend that it was error for the trial court to award custody of the child to the paternal grandparents. They contend that the paternal grandparents had stated that they did not want the child, and that placement with the paternal grandparents would allow the father uncontrolled access to the child while, in effect, denying the mother contact with her child. They further contend that the child had established a home in Virginia with them before the mother tried to reconcile the marital differences with the father and brought the child to Mobile. Additionally, they contend that the mother is living with them and that they were willing and able to provide supervision of her and the child to whatever extent necessary to enable the mother and child to be together. Our review of the record reveals that these arguments were before the trial court for its consideration in the initial custody determination.
We note at the outset that matters of child custody and visitation rest soundly within the discretion of the trial court. Hutchinson v. Davis, 435 So.2d 1303 (Ala. Civ.App.1983). When the judgment of the trial court in such matters follows ore tenus proceedings, the decision will not be reversed unless it reflects an abuse of discretion, or plain error. Hutchinson. See also, Self v. Fugard, 518 So.2d 727 (Ala. Civ.App.1987).
Paramount consideration in child custody cases is the best interest of the child. Brown v. Alabama Department of Pensions & Security, 473 So.2d 533 (Ala. Civ.App.1985). It is well established that in a custody dispute between a parent and a nonparent, the parent has a prima facie right to custody. Ex parte Terry, 494 So.2d 628 (Ala.1986). The rationale is that, as a matter of law, the child's best interest will be served by maintaining custody in the parent. Id. However, the presumption can be defeated by showing that the parent is unfit or unsuited to have custody of the child. Self. Likewise, the parent's prima facie right to custody is defeated if the parent either voluntarily forfeited custody *421 of the child to a nonparent, or a previous decree placed custody in a nonparent. Roden v. Colburn, 522 So.2d 290 (Ala.Civ. App.1988).
In the instant case, we have both parents and both sets of grandparents petitioning for custody of the child, as well as DHR petitioning for temporary protective custody, from the beginning of this custody dispute. We cannot ascertain from the record whether the parents are still married to each other or whether future reconciliation is a possibility. However, the record contains sufficient evidence to show that the parents are living separately and in different states. We have no finding of unfitness or abandonment of the child by either parent, only a finding that the child suffered an injury due to the neglect of the mother and that the father has a substance abuse problem, which continues to go untreated even after court orders to obtain treatment. We note that although each parent petitioned separately for custody and lost, neither parent appeals. Therefore, for purposes of our review, this case involves an initial custody dispute between two nonparents.
This court's primary concern, as was that of the trial court, is the best interest of the child. State Department of Pensions & Security v. Hornbuckle, 336 So.2d 1372 (Ala.Civ.App.1976). It is the responsibility of this court "to examine the decision of the trial court in light of the testimony and its reasonable inferences and determine if that decision satisfies the concern of the best interest and welfare of the child." Hornbuckle at 1374. This court must set aside a judgment that is so unsupported by the evidence that it clearly fails to sustain the present and future best interest and welfare of the child. Hornbuckle.
The trial court, without a finding of unfitness, determined that at this time neither parent is capable of caring for the child and that the grandparents would ultimately be responsible for meeting the child's needs. Fortunately, the trial court had two sets of grandparents desiring and willing to accept custody of the child. Determining which set of grandparents should be awarded custody was obviously a difficult and time-consuming process for the trial court due to the numerous hearings involving this child's custody. We are bound by the strong presumption favoring the trial court's findings in child custody cases. Cochran v. Lowe, 532 So.2d 1265 (Ala.Civ. App.1988). We must affirm that determination unless it is so contrary to, and unsupported by, the evidence as to appear clearly adverse to the best interest and welfare of the child. Davis v. Davis, 365 So.2d 80 (Ala.Civ.App.1978). There is ample evidence in the record supportive of a custody award to either set of grandparents.
Consequently, we cannot find that the trial court erred in its award of custody to the paternal grandparents.
Accordingly, the judgment of the trial court is due to be affirmed.
AFFIRMED.
INGRAM, P.J., and RUSSELL, J., concur.