590 So.2d 329 (1991)
P.G.
v.
W.M.T.
In re the CUSTODY OF D.B.G., a Minor.
2900225.
Court of Civil Appeals of Alabama.
November 8, 1991.
David H. Webster of Legal Services Corp. of Alabama, Inc., Gadsden, for appellant.
Jack Floyd and John D. Floyd, Gadsden, for appellee.
THIGPEN, Judge.
This is a child custody case.
D.B.G., a minor, is the natural son of P.G. The child has been in the physical custody and care of W.M.T., the mother's aunt, since October 1986, when the child *330 was approximately three weeks old. In 1988, P.G. filed a petition for custody determination, and following an ore tenus proceeding, the trial court awarded legal custody to W.M.T. On appeal, this court held that the trial court erred in not following the holding of Roden v. Colburn, 522 So.2d 290 (Ala.Civ.App.1988), and Ex parte Terry, 494 So.2d 628 (Ala.1986), which required the trial court to find that a natural parent is unfit for custody or that the natural parent has voluntarily relinquished custody, before awarding custody to a nonparent. The trial court judgment was reversed and the cause remanded with instructions that absent the Terry and Roden requirements, the trial court must grant custody to the natural mother. See Gross v. Turner, 564 So.2d 967 (Ala.Civ. App.1989).
W.M.T.'s motion for rehearing and petition for certiorari were denied, and ultimately, the trial court complied with the appellate instructions, but W.M.T. never relinquished physical custody of the child to P.G. Subsequently, W.M.T. filed another petition asserting a material change in circumstances in that P.G. is unfit to have custody of the child, and requesting that custody of D.B.G. be awarded to W.M.T. After an ore tenus proceeding, the trial court determined that P.G. was "unfit and unsuited for custody," awarded custody of the child to W.M.T., and granted to the mother visitation with the child. P.G. appeals.
As in the original case involving these parties, we are again faced with reviewing the decision of the trial court to award custody of the child to the child's great-aunt. The mother also challenges the trial court's ruling that the aunt was not in contempt when she failed to relinquish the child to the mother after having been ordered to do so.
Although the review of a finding in a contempt proceeding is usually by petition for writ of certiorari and not by appeal, we can and elect to consider this issue in this appeal; however, our scope of review is limited to questions of law and whether there was any legal evidence supporting the judgment of the trial court. Willcutt v. Willcutt, 565 So.2d 636 (Ala. Civ.App.1990). See also Rule 33.6, A.R.Cr.P. This court does not agree with W.M.T.'s refusal to deliver the child after custody was awarded to P.G.; however, there is evidence in the record that W.M.T. made attempts to contact P.G. regarding the child, and that P.G. failed to follow through on those contacts. There is also testimony that P.G. did not attempt to contact W.M.T., although it is clear that P.G. had the necessary information, i.e., W.M.T.'s address and telephone number, to do so at any time. There is evidence in the record supporting the trial court's finding that W.M.T. was not in contempt. Consequently, P.G.'s argument that W.M.T. was in contempt and should not have been allowed to go forward with her custody petition is without merit.
Matters of child custody are subject to the sound discretion of the trial court, and custody decisions, which are based on ore tenus evidence, will not be reversed except for abuse or plain error. Hutchinson v. Davis, 435 So.2d 1303 (Ala. Civ.App.1983). The paramount consideration in child custody cases is the child's best interests. See H.T. v. C.T.W., 569 So.2d 418 (Ala.Civ.App.1990). In determining the child's best interests, the court must consider whether a party to a custody proceeding is physically, financially, and mentally able to care for the child. Matter of Von Goyt, 461 So.2d 821 (Ala.Civ.App. 1984). In a custody dispute between a parent and a nonparent, the natural parent has a prima facie right to custody. Terry, supra. The rationale is that, as a matter of law, a child's best interests and welfare will be served by maintaining custody in the natural parent. Terry, supra. The strong presumption of the natural parent's prima facie right to custody can only be overcome by a finding that the natural parent is unfit or has voluntarily relinquished custody of the child. H.T.; Roden; Terry.
In the instant case, the trial court made a determination that there is "clear and convincing evidence" that P.G. is "unfit *331 and unsuited for custody" based on "a significant change of circumstances since the last hearing." Reviewing only the evidence occurring since the last hearing, there is ample evidence in the record upon which the trial court could have based this determination. There was testimony that P.G. showed very little maternal affection for the child, and that her brief and irregular visits with the child were not characteristic of a mother who has not seen her child for an extended period of time.
There was testimony before the trial court regarding the mother's current living conditions and her recent questionable behavior upon which the trial court could have based its ruling that "[P.G.]'s lifestyle is not a proper environment for the said minor child." Specifically, that evidence is that the mother, who lives alone in a housing project that has its rent based on the resident's income, may not be mentally, physically, or financially able to meet the child's needs. The mother's only income consists of a disability check which she receives apparently due to her mental condition. When questioned, P.G. responded that she did not work and had no intention of seeking work because she receives a disability check. Yet P.G. testified that she is not disabled. She further testified that she takes pills to keep her from getting sick. When questioned about the nature of the medication and sickness, she responded that if she did not take her medication, she would have to go back to the hospital, but she was unable to specify what the medication prevented. The record shows a history of hospitalizations of P.G. for mental illness; however, it appears that her mental condition is currently stabilized by medications. P.G. and her therapist testified that P.G.'s mental disability precludes her from being able to tolerate the pressures of employment.
Further evidence in the record supports the conclusion that P.G.'s behavior could be substantially detrimental to the child's welfare. There was testimony that P.G. frequents an area where she stops cars and asks men for money and cigarettes. Other testimony was that P.G.'s apartment was cluttered with beer cans and dirty clothes, and that on occasion, her toilet was not functioning. The trial court's order expressing concern over the lack of motherly love and affection shown by P.G. is supported by the record testimony that on the few occasions when P.G. visited the child, she indicated no love or affection toward the child. We find that the natural mother's superior claim to the child is overcome by the record evidence showing that she is incapable of caring for the child.
The primary concern in this case must be the best interests of the child. State Department of Pensions & Security v. Hornbuckle, 336 So.2d 1372 (Ala.Civ.App.1976). It is noteworthy that the child has been in the constant care and supervision of W.M.T. all but the first three weeks of his life, and he is now about five years old. In the years that W.M.T. has demonstrated a constant concern for the child's welfare and best interests, P.G. has failed to maintain consistent contact or communication with the child.
There is clear and convincing evidence supporting the trial court's determination that P.G. is unfit, and that awarding the custody of the child to W.M.T. is in the child's best interest. We cannot say that there has been an abuse of discretion.
AFFIRMED.
ROBERTSON, P.J., and RUSSELL, J., concur.